Wednesday, October 30th, 1816.
JUDGE ROANE
pronounced the following opinion •of the Court.
The Court is of opinion that, upon the testimony exhibited in this cause, there is no ground to say that the sale of the negroes Peter and Molly in the Bill mentioned was a transaction to cover a reservation of usurious interest upon a loan of money ; — but that, for aught that appears, the said sale was a real sale of the said negroes upon a credit; in which case it is lawful to agree upon and take a greater price than that, with interest, for which they had been previously offered in cash; and that, consequently, there is no ground to impeach the Judgment now sought to be enjoined.
But the Court is of opinion that the sale of the Appellee’s negroes Mingo, John, and Celia, and the purchase of them by the Appellant, was made under circumstances which ought to invalidate the same. It is in full proof that the Appellee stated at the time of the sale that he had an Injunction from the Court of Chancery, by which all persons were inhibited from selling the said slaves; that he offered to exhibit the same in full, and establish the identity of the negroes in relation to those mentioned in the said Injunction Bill; and that it was only owing to the conduct of the Appellant, and his brother the Deputy Sheriff that this was not done. In this transaction the conduct of the Appellee was entirely correct, as he acted in obedience to the decree of a competent Court, then admitted by the Appellant to have been in existence, whereas the Appellant and the said Sheriff acted in contempt thereof. As to what is said of the said Injunction not binding the right of the Appellant, as he was no party to the suit, in which it was obtained; while this is admitted, it only means that he is not inhibited from asserting that right by a suit or proceeding, to which he is a party. While the Injunction, however, is in force, it is conclusive that the Appellee had no right in the said slaves which could at that time be lawfully *sold to satisfy the execution against him. A sale of his interest therein, at that time, and under those circumstances, would unavoidably sacrifice that interest, if it should be afterwards found that he had any; and would be to consider that, as his property, which, under an existing decree, must be considered as the property of, or as liable to satisfy the claims of others. The result of the sale before us is a commentary upon the doctrine thus laid down. All other persons except the Appellant were prevented, by the course adopted by him, from buying as Belches’s property, the negroes in question, and they were consequently sold for considerably' less than their value. The sale therefore ought not to stand, but the Appellant be decreed to deliver up the said negroes and their increase to the Appellee, and pay to him the amount of their hires.
Here the Decree might end, were it not that the Appellant has got a Judgment against the Appellee and Francis Willis, and I may proceed against him or them for satisfaction thereof; and if it now appears to the Court that there is some specific property bound for the payment of the Appellant’s debt, that property ought to be subjected to pay it in the first instance. The Appellee alleges in his Bill that, prior to the execution of the Trust Deed to Hughes and Camp, contained in the proceedings, Charles Grymes had made over to him and Francis Willis (his Co-security) the said negroes Peter and Molly, to indemnify them for their securityship in the bond in question; and the defendant Tomkies, in his answer, admits, that “he believes the Appellee and Willis did take the said Deed” for the purpose aforesaid. .Admitting, (on which, however, the Court gives no opinion,! that the Appellee consented that, upon the execution of the Deed to Hughes and Camp, his own lien on the negroes Peter and Molly by virtue of the previous Deed to him and Willis should be released, he did not release it, nor was he competent to release it, as it relates to Willis, who was no party to that transaction. As to Willis, therefore, at least, the said Deed is still in full force; and if it were in fact destroyed, as is stated by the Appellee in his bill, under the supposition therein also mentioned, it would be set up as to Willis in a Court of Equity; but the necessity of that proceeding is prevented by the admission of the said *Tomkies as aforesaid. That Deed, as to Willis, will therefore be considered as if it were now before the Court.
The Court is of opinion, that, even if Willis had been no party to the Judgment now sought to be enjoined, nor to the execution, it would be competent to the Ap-pellee, after paying off the same, to resort to him as a co-security for contribution of a moiety thereof; and that, for the purpose of preventing circuity, and getting payment out of the proper fund, it would be also competent to him, as standing in the place of Willis, to go for the said moiety against the negroes conveyed bj the said Deed.
The Court is also farther of opinion that, under that hypothesis, it would be competent to the Appellee to stand in the place of Willis, and charge the said negroes for the whole sum. Nothing is more consonant to natural Justice, than that the proper debts of every man should be paid out of his own estate, in case of innocent securities, and that that property of his, in particular, should be subjected, which has been bound thereto by a specific and existing lien. These principles will avail the present Appellee, supposing him to have released for himself his own proper lien created by the first deed. In the case of Eppes Executor of Wayles v. Randolph, 2 Call 125, Randolph, by a Bond, to which Wayles Was his surety, bound himself and his heirs to Bevins. Randolph became insolvent as to his personal estate, and Bevins got a decree, for payment of the Bond, against Wayles’s representatives, who paid the same. Wayles’s representatives, on these facts being manifested to the Court, were permitted to stand in the place of Bevins; be considered as Bond *396 Creditors; and charge the Lands of Randolph in the hands of his heirs, on ' which they had themselves no lien. The principles of this decision go to charge the negroes conveyed by the Deed to the Appel-lee; and, as all the parties concerned in interest are now before the Court, may be applied in favour of the Appellee Belches. That view of the case is, however, much strengthened, when it is considered that the Judgment in Gloucester Court was also rendered against Willis, and the Execution was issued also against him, though it was only levied .upon the property of the Appel-lee.
*It is but a small boon to ask for a security that he shall make the property of his principal, which is bound by a specific and existing lien, liable, in exoneration of his own, in the same manner as it would have been, if the execution had been levied upon the property of his co-security in the first instance. The Court is therefore of opinion, that the Appellant should be decreed to resort to the negroes Peter and Molly and their increase, (which were purchased by Tomkies from the Trustees Hughes and Camp,) for the payment of his debt and interest; that, in the event of payment not being made by Tomkies within a short and given day, the said negroes should be sold to satisfy the same; that, if the said Tomkies should have sold the said slaves, or any of them, he or his representatives should be decreed to pay the amount thereof in exoneration of his bona fide alienees; that, in the case of the insolvency of him, or his estate, for such amount, in the whole or in part, the Appellant shall be at liberty to seek satisfaction from the said negroes and their increase, in whose hands soever they may be, by a suit or proceeding, to which the respective holders and the Appellee are parties; and that the Appellant should only be at liberty to resort to the proper goods of the Appel-lee for such part of his debt and interest, if any, as may remain unpaid from the several sources above-mentioned. It is no objection to this decree, that it is nominally in favour of one defendant, and against another; for it is substantially a decree in favour of the plaintiff, (Belches,) who thereby exonerates his own estate. Therefore it is decreed and ordered, that so much of the decree of the said Court of Chancery, as conforms to the principles of this Decree be affirmed; and that so much of it, as conflicts therewith be reversed and annulled; and also that the Appellant pay unto the Appellees, being the parties substantially prevailing, their costs by them about their defence in this behalf expended. And it is ordered that the cause be remanded to the said Court of Chancery, to be finallly proceeded in pursuant to the principles of this decree.
LIENS.
I.Definition.
II.In General.
III.How Created.
A. By Statute.
B. By Express words.
1.Contract to Be Considered.
C.By Implication.
1. By Assignment.
IV.Property Subject to Lien.
V.Waiver, Discharge or Release.
VI. Priorities.
VII. Pleading and Practice.
Cross References to Monographic Notes.
Agencies, appended to Silliman v. Fredericksburg, etc., R. R. Co., 37 Gratt. 119.
Attachments, appended to Lancaster v. Wilson, 27 Gratt. 624.
Attorney and Client, appended to Johnson v. Gibbons, 27 Gratt. 632.
Building' and Loan Associations, appended to White v. Mech. Building Fund Association, 22 Gratt. 233.
Deeds of Trust, appended to Cadwallader v. Mason, Wythe 188.
Executions, appended to Paine v. Tutwiler, 27 Gratt. 440.
Judgments, appended to Smith v. Charlton, 7 Gratt. 420.
Lis Pendens, appended to Stout v. Vause, 1 Rob. 169.
Mortgages, appended to Forkner v. Stuart, 6 Gratt. 197.
Vendor and Purchaser.
I. DEFINITION.
A lien is a hold or claim which one person has upon the property of another as a security for some debt or charge. Central City Brick Co. v. N. & W. R. Co., 44 W. Va. 286, 28 S. E. Rep. 926.
Or the ligament or tie which binds certain property to a particular debt for its payment or satisfaction. United States Blowpipe Co. v. Spencer, 40 W. Va. 698, 21 S. E. Rep. 769.
II.IN GENERAL.
“The doctrine may be stated in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien on the property so indicated, which is enforceable against the property in the h ands, not only of the original contractor, but of the heirs, administrators, executors, voluntary assignees, and purchasers or incumbrancers with notice. Under like circumstances, a merely verbal agreement may create asimilar lien upon personal property.” Knott v. Shepherdstown Manufg. Co., 30 W. Va. 790, 5 S. E. Rep. 268.
III.HOW CREATED.
A. BY STATUTE.
Lien on Live Stock. — One who keeps a horse or other live stock for compensation has a lien thereon for such compensation byiCode 1891, ch. 100, §15. Lambert v. Nicklass, 45 W. Va. 527, 31 S. E. Rep. 951.
Snpply Lien. — Pig iron furnished a rolling mill, whose business is to manufacture iron, steel, and other metals, is “a supply” within the meaning of Va. Code 1887, § 2485, giving a lien to all persons furnishing fuel and other supplies necessary to the operation of any manufacturing company. Va. Development Co. v. Crozer Iron Co., 90 Va. 126, 17, S. E. Rep. 806.
B. BYEXPRESS WORDS. — Every express execu-tory agreementin writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund therein identified, a security for a debt or other ob *397 ligation. or whereby the party promises to convey, assign or transfer the property as security, creates an eauitable lien upon the property so indicated, which is enforceable against the property, Knott v. Shepherdstown Manufg. Co., 30 W. Va. 790, 3 S. E. Rep. 206.
And a person conveying real estate may create a lien thereon, and charge the same with his support and maintenance by express words showing his intention to so charge the land. McClure v. Cook, 39 W. Va. 579, 20 S. E. Rep. 612; Crim v. Holsberry, 42 W. Va. 667. 26 S. E. Rep. 314.
And where K. made two entries and surveys on one tract of land of eighty-iive acres and another of one eighty-seven acres, and persons claiming under C entered a caveat to prevent grants issuing to FC, for the two tracts, claiming that they were partly included in the tract formerly ■owned by C. There was an agreement that K should receive $200 for releasing all claim to the land supposed to be within the tract formerly owned by C and that he should receive a conveyance for the land not within such tract. Upon a snrvey it was found that the 187 acre tract was wholly within, and the 85 acre tract without the tract owned by C. Held, that it was not ■error in the lower court to declare the $200 with interest a lien on the 187 acre tract. Cleggett v. Kittle, 6 W. Va. 452.
Instrument Invalid as Mortgage Not Good as Equitable Lien. ™An instrument executed by a married woman as a mortgage on her separate estate, but invalid as such, her husband not uniting in its execution, does not create an equitable lien on the ■estate. Paxton v. Stuart, 80 Va. 873, 17 S. E. Rep. 552.
Money to Be Paid Out of Proceeds of Particular Property Creates Lien. — where a creditor has advanced money which is to be paid out of the proceeds of particular property or which is held as a security for the debt he is thereby entitled to alien on the property so held. Ruffners v. Putney, 12 Gratt. 541.
Lien Reserved on Both Real and Personal Property May Be Enforced ac to Both.- Where a lease is sold with certain personal property thereon for a gross sum for both, and in the writing transferring the lease and the personal property a lien is reserved for the payment of the purchase money, as between the parties to the contract of sale and those having actual notice of it the lien will in a court of equity be declared to be valid and. will be enforced by a sale of both real and personal property tor the purchase money of both. Cole v. Smith, 24 W. Va. 287.
Contract to Apply Proceeds or Rents and Profits of a Particular Tract of Land Creates Lien. — A contract in writing, whereby the contractor agrees to apply the proceeds of a particular tract of land, or any portion thereof, to the payment of a debt, or whereby the contractor agrees to apply the rents and profits of a particular tract of land, or any portion thereof, to the payment of a debt, creates an equitable lien on such land, or such portion thereof, which a court of equity will enforce against volunteers and purchasers with notice. Smith v. Patton, 12 W. Va. 541.
And a contract in writing, whereby the contractor agrees to purchase a particular tract of land, and executes a mortgage thereon to secure a debt, •creates an equitable lien on such land when purchased, which a court of equity will enforce against the contractor and against volunteers and purchasers with notice. Smith v. Patton, 12 W. Va. 541.
Contract for Lien on Adjoining Tenements. — A •debtor contracts to give a lien on two adjoining tenements to secure a debt, and the creditor is in possession of one of the tenements under an agreement by which the rent of the tenement is to be taken in satisfaction of the interest on the debt. Afterwards the debtor becoming embarrassed in his circumstances, conveys all of his property in trust to pay his debts. Held, the creditor is entitled to enforce his equitable lien not only against the debtor but his creditors. Ott v. King, 8 Gratt. 224.
1. CONTRACT to Uk Considered. — ■The contract and the nature of the property should be considered in determining whether the contract gives an equitable lien. Ruffners v. Putney, 12 Gratt. 541; William, etc., College v. Powell, 12 Gratt. 372; Patton v. Hoge, 22 Gratt. 443.
C. BY ÍMPJLdCATrON. -A court of equity frequently implies a trust from the contracts of parties, though no words of trust be used. Thus an order to pay a debt out of a particular fund, gives to the creditor a lien on this fund, but this is distinguished from a covenant by a debtor to pay a debt out of a certain fund, such a covenant not creating a lien on the fund, bnt creating merely a personal obligation. Smith v. Patton, 12 W. Va. 553.
But there is no imx>lied equitable lien in favor of a sellor of personal property for the purchase money thereof. James v. Bird, 8 Leigh 510: McCandlish v. Keen, 13 Gratt. 629; Cole v. Smith, 24 W. Va. 290.
And where two joint tenants of real estate agree with each other, that one shall, with his own money, erect improvements on the real estate, jointly held, and have a lien on the interest of the other, for the money expended, the agreement, with the actual erection of the improvements by the one and the acquiescence of the other, constitutes such a Hen as will be recognized and enforced in a court of equity. But such a lien is not valid, and win not be enforced in favor of the tenant who erects the improvements, against a creditor of the other, who has caused his interest in the property to be attached or a purchaser under such attachment; whether the creditor attaching or the purchaser under the attachment, have notice of the previous equitable lien or not. Houston v. McCluney, 8 W. Va. 135.
Annuity — Letter Considered in Construing Contract. —Sadlier granted Watson an annuity for life, the deed not containing the usual power of distress to enforce the annuity, and naming no lands, either specifically or by the general name of lands. Butit did contain a covenant that Watson might recover and receive from Sadlier and his heirs, executors, etc., and from his and their estate, real and personal, such annuity. When this deed was about to be prepared, Sadlier wrote to Watson and named certain land which was to be charged with this annuity. The master oí the rolls considered that from this letter an agreement should be implied, that the lands named in it were to be charged with the annuity, and that Watson had a lien therefor on them. Smith v. Patton, 12 W. Va. 555.
Charge on After-Acquired Property. — If a covenant or contract be to charge with the payment of a debt a particular specified tract of land, which the covenantor was thereafter to purchase, it would seem to be a fair deduction from the authorities, that when purchased a court of equity would regard it as held subject to an equitable lien, created by such covenant. Smith v. Patton, 12 W. Va. 554.
AsoSgising Insurance Policy Does Not Create Lien. —Where there was an obligation entered into to pay a certain sum of money, and an agreement entered into to have certain property insured and the policy assigned to the obligee, which policy expired and was not renewed it was held that no *398 lien was thereby created on the property which was mentioned in the policy. Knott v. Shepherdstown Mfg.Co., 30 W. Va. 790, 5 S. E. Rep. 266.
Covenant Not to Encumber Not Lien. —“And the said company further covenants that it will not give any voluntary lien of any character whatever on any of its buildings, machinery or grounds so long as this debt remains unpaid.” Of course this creates no lien or pledge of any property. It is siniply negative; an agreement not to do a particular thing. The creation of a lien is an affirmative act and the intention to do such act cannot be implied from an express negative. Knott v. Shepherdstown Mfg. Co., 30 W. Va. 790, 5 S. E. Rep. 369.
Paying More Than Just Share. — Where two persons purchase a tract of land jointly, and one of them pays more than his proportion of the purchase money, while the other takes a conveyance of the whole to himself, the person who has thus advanced more than his share, has a lien on the land for the money so advanced. Hays v. Wood. 4 Rand. 272.
1. By Assignment.
To Constitute There Must Be Actual or Constructive Appropriation. — A mere promise though of the clearest, and most solemn kind, to pay a debt out of the particular fund, is not an assignment of the fund, even in equity. To make an equitable assignment, there should be such an actual, or constructive, appropriation of the subject matter, as to confer a complete and present right on the parti' meant to be provided for, even when the circumstances do not admit of its immediate exercise. Feamster v. Withrow, 9 W. Va. 313.
Direction to Pay Out of Certain Fund Not an Assignment — A holding a bond of B places it in C’s hands to collect the money for him when due, and if not paid, tQ put it in an attorney’s hands to collect by suit; the money was not paid when due, and C put the bond in attorney’s hands for collection: then A addressed a letter to C telling him he owed D about $200 out of the money B owed him; and desiring C when he collected the money from B, if A himself should not happen to be present, to pay the whole toD; and this letter being presented byD to C, C accepting the order therein contained, only told that B’s bond was in the attorneys hands; the amount of B’s bond exceeded the amount due from A to D. Held, the letter of A to C was neither an equitable assignment by A to D of so much of B’s debt to A nor a security given by A to D for the debt he owed him. Clayton v. Fawcett, 2 Leigh 19.
And R and D by a writing signed with their names, acknowledge themselves to be due S $969.87, which they promised to pay as soon as the money can be made on a judgment in the hands of the sheriff of Greenbrier county, in favor of D against F with interest from date. Held, that the said writing does not by any of its provisions, have the effect to transfer, or assign, the said judgment debt to S either at law or in equity. Feamster v. Withrow, 9 W. Va. 296.
IV. PROPERTY SUBJECT TO LIEN.
Personal and even transitory and fluctuating property may be made the subject of a lien, at the pleasure of the contracting parties; but, generally, explicit words should be used to effect that purpose, where such lien is not raised by operation of law or equity. Williams v. Price, 5 Munf. 507.
V. WAIVER, DISCHARGE OR RELEASE.
Depends on Intention of Releasor. — Whether or not a particular transaction amounts to the release of a lien on real estate is a question of intention on the part of the releasor. In a doubtful case such intention will not be implied; but, when it is clear that such was the intention, a court of equity will enforce the release, although no formal release has been executed. Stribling v. Splint Coal Co., 31 W. Va. 82, 5 S. E. Rep. 321.
Lien Not Waived by Transfer of Property. — Real or personal property on which there isa lien maybe transferred from one person to another and the lien is not thereby waived or lost. Dewing v. Hutton, 40 W. Va. 521, 21 S. E. Rep. 780.
Lien for Keeping Live Stock Not Discharged by Levying Attachment. — An innkeeper or keeper of live stock who has a lien on the property does not lose the lien by levying an attachment upon the property. Lambert v. Nicklass, 45 W. Va. 527, 31 S. E. Rep. 951.
Discharge or Release by Mistake or Fraud. — A lien discharged or released through fraud or mistake* will be restored in equity unless innocent third parties are affected. Seymour v. Alkire, 47 W. Va. 302, 34 S. E. Rep. 953.
Lien Not Effected by Transfer of Equity of Redemption. — A valid lien is not divested by the mere fact of the holder of it subsequently taking a transfer of the equity of redemption, made him with a view of giving him a preference. Carr v. Summerfield, 47 W. Va. 155, 34 S. E. Rep. 804.
Release of Public Trust Fund by Legislature. — In the year of 1863 the general assembly authorized the. payment of an amount in confederate currency* which in 1790 was bequeathed in trust for the poor of Prince Williams county and which was invested in land. Held, that the land was released from the lien. Prince William School Board v. Stuart, 80 Va. 64.
Mortgage to Party Having No Notice of Equitable Lien. — if a contractor renders an equitable lien unavailing by executing a mortgage on such land, in favor of a party having no notice of such equitable lien, such .conduct would not justify a court in charging any other lands of the covenantor with such debt. Smith v. Patton, 12 W. Va. 541.
VI. PRIORITIES.
Liens Given by Statute. — Where liens are given by statute the one being first in point of time, takes precedence. Puryear v. Taylor, 12 Gratt. 401.
Lien of Keeper of Live Stock Prior to That of Execution. — Where an execution was levied on a horse and buggy which was held by an innkeeper for the keeping of same it was held that his lien was prior to that of the execution. Lambert v. Nicklass, 45 W. Va. 527, 31 S. E. Rep. 951.
Equal Equities, Elder Prevails. — But though it is-a general rule that between equities equal in all other respects the elder shall prevail, yet where a lien is secret, and another is permitted to take possession of property, hold and make payments on it without notice his equity will be preferred. Cox v. Romine, 9 Gratt. 27.
Annuity Not Specifically Charged on Property Subsequent to Other Creditors. — A conveys real and personal property in consideration of a sum of money and of an annuity for the life of the grantor if she survives the grantee, from the death of the grantee; and in the deed the grantee covenants that his estate shall pay to the grantor, if she survives, him, the annuity. Held, this does not create a charge upon the property conveyed, so as to-entitle the grantor to subject the same to the payment of the annuity after the death of the grantee, in preference to other creditors of the grantee. McCandlish v. Keen, 13 Gratt. 615.
VII. PLEADING AND PRACTICE.
Parties. — A deed by Mand H to D conveying a tract of land with general warranty of title, in. consideration of $1,250.00 of which $646.00 is paid* *399 9001.00 the residue thereof is to he paid, whenever two bonds of $300 00 each are produced which J executed to ft. Held, that a lien is retained for the unpaid purchase money 9804.00 but it cannot be enforced in cauity without making M. and K. parties defendant. Robinson v. Dix, 18 W. Va. 528.
When Motion Permissible. — A person may be heard on a mere motion, when not a party, in a suit to have a sale of real estate to satisfy a lien where he has acquired one or more liens subsequent to the commencement of the suit and desires to have the surplus applied to his debt if there is no dispute as to title, but if so, a. bill must be filed, Thornton v. Fairfax, 29 Gratt. 669.
limting Leg"! and Equitable Demands Does Not Render Bill rfaltifarious. — The uniting'a purely legal demand in a bill which seeks the enforcement of an equitable demand, will not render the Mil liable to be dismissed as multifarious. Smith v. Patton, 12 W. Va. 541.
Enforcement of Innkeeper’s Lien. — An innkeeper having a lieu has no right to sell the property without a judicial proceeding. If he does, ho. is liable to an action of trover for its unlawful conversion, besides loosing his lien. His only remedy is to hold it till payment. Unreasonable this is: but where no statute can be found providing for a sale it is so, by much authority. Lambert v. Nicklass, 45 W. Va. 527, 31 S. E. Rep. 952.
Valsse oí Real estate Not to Be Ascertained, before Sale. — Jn a. suit to subject real estate to the payment of the liens thereon it is not necessary to scertain the value of the real-estate before its sale is ordered. Grantham v. Lucas, 24 W. Va. 231.